### PICTORIAL REVIEW CO. v. CURTIS PUB. CO.

#### (District Court, S. D. New York. June 23, 1917.)

MONOPOLIES ⊙⇒17(2)—SYSTEM OF MARKETING PERIODICAL—CLAYTON ACT—"PURCHASERS."

Contract between publisher of "Ladies' Home Journal" and its so-called "district agents," which prohibited handling other magazines without the publisher's consent, withheld in case of "Pictorial Review," competitor of "Ladies Home Journal," *held* not forbidden by Clayton Act, § 3 (Comp. St. § 8835c), as requiring purchasers to refrain from handling goods of competitors, or as generally causing unreasonable restraint of trade; district agents being more than mere "purchasers."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Purchaser.]

In Equity. Suit by the Pictorial Review Company against the Curtis Publishing Company. On plaintiff's motion for temporary injunction. Motion denied.

Stanchfield & Levy, of New York City (John B. Stanchfield, William M. Parke, and Toney A. Hardy, all of New York City, of counsel), for complainant.

Joseph W. Welsh and John G. Milburn, Jr., both of New York City (John G. Milburn, of New York City, of counsel), for defendant.

AUGUSTUS N. HAND, District Judge. The complainant corporation publishes the Pictorial Review, and the defendant the Ladies' Home Journal, the Saturday Evening Post, and the Country Gentleman. The Pictorial Review has been distributed by the American News Company, a distributing agency, which has about 60 branches throughout the United States. The defendant, on the other hand, has put the Ladies' Home Journal on the market through wholesale dealers of established efficiency in the various towns and cities of the Unit-

ed States. Munsey seems to have distributed his publications to some degree as early as the year 1890 through local dealers, but the defendant in 1899 introduced an elaborate system for training newsboys to do expert work in selling magazines. It was evidently the opinion of the defendant that the circulation of its magazines would be greatly promoted if the newsboys selling the defendant's publications were organized, their mental and moral progress stimulated, and a legitimate ambition to excel in their work fostered. The affidavit of its circulation manager describes the system. It involves the appointment by the defendant of district agents, who select the boys and teach them to sell. These agents make a weekly detailed report to the defendant as to each boy. The boys form a "League of Curtis Salesmen," consisting only of schoolboys, and with various ranks. These ranks are determined by proved efficiency. Each league member is given a Y. M. C. A. membership paid for by the defendant, and the latter undertakes to secure a good position for each master salesman after he has finished school and outgrown the work. More than 2,000 firms and corporations appear to have filed applications with the defendant to secure these graduate master salesmen as employés.

Regular publications are issued monthly as a part of this system: (1) To the district agent; (2) to the boys; (3) to the parents and teachers of the boys. The defendant has spent a large amount of money in developing and maintaining this system. Sometimes the defendant has selected as its district agents wholesalers who had an existing staff of newsboys, but in such cases the boys have apparently become a real part of the "League of Curtis Salesmen," and have been required to conform to the system. More often the district agents and their staff of boys have been started and developed from the beginning through the labors of the defendant, and in many cases the district agents have been old Curtis boys, who have graduated from their earlier work, followed the same general kind of business, and become wholesale dealers for the Curtis Company. This system was used by the defendant to promote the sale of the Saturday Evening Post, and was so successful that it employed it with the Ladies' Home Journal.

It is evident that supervising district managers were necessary to carry out the plan I have described, and defendant in contracting with these managers has provided that they should pay for magazines furnished them in advance and should supply subagents, both boys and dealers, with copies of defendant's publications at fixed rates. It also has provided that the district agents shall refrain from wholesaling to boys or dealers, and from attempting to influence any Curtis agent to sell any periodical other than those published by the Curtis Publishing Company, and shall refrain from furnishing any other publisher or his agent with the names and addresses of any Curtis agents without first obtaining the approval of the publishers. The clause in the contract with the district agents relating to the Curtis boys is subdivision 12, and is as follows:

"To send to the home office, on blanks furnished by the publishers, not later than directed by the report blanks, reports itemizing the number of copies of each publication sold by each boy, dealer, or other subagent, or

sold at retail by the district agent or his employés, and to distribute rebate vouchers regularly to subagents, according to instructions from the publishers: Provided that rebate vouchers shall be given to subagents only, and are not redeemable by the district agent nor by his relative or salaried employés."

The district agents may sell any magazines they desire, including the complainant's, at their own news-stands, but their contracts forbid them to furnish boys or retail dealers with magazines other than those of the defendant, without first obtaining the defendant's approval. Such approval has been in general granted, but has been refused in the case of the Pictorial Review. That magazine is the active competitor of the Ladies' Home Journal. Each has a large sale throughout the country, and is of special interest to women. The marked success of defendant's system of marketing its magazines has attracted the complainant, and the latter desires to avail itself of defendant's wholesale agents, without the expense which is involved in building up such a system as the defendant has employed. It argues that the defendant cannot insist that its wholesalers shall not market the Pictorial Review without violating the Clayton Act (Act Oct. 15, 1914, c. 323, 38 Stat. 730), for the reason that a contract that the district agents shall not deal in the Pictorial Review through newsboys or subdealers substantially lessens competition, and is forbidden by section 3 of that act (Comp. St. § 8835c), which reads as follows:

"Sec. 3. *Requiring Purchasers, etc., of Goods, etc., to Refrain from Handling Goods, etc., of Competitors.*—That it shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies or other commodities, whether patented or unpatented, for use, consumption or resale within the United States or any territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement or understanding may be to substantially lessen competition or tend to create 'a monopoly in any line of commerce."

I can have no doubt that the district agents or wholesalers who receive from the defendant the Ladies' Home Journal and put it on the market are purchasers of the magazine. There can be no question, in view of the payment in advance and the other elements of the transaction, that title to the magazines which these wholesale agents receive passes to them. They are not mere factors or agents. Nevertheless they are clearly much more than purchasers. The prime characteristic of the Curtis system is to market the defendant's magazines through newsboys, and to develop an efficient body of these boys by a proper selection in the first place, by keeping them in good surroundings, by appealing to their ambition through conferring ranks and prizes in case of success, and by obtaining good business positions for those who have retired. There is no doubt that by means of this system the sale of the defendant's magazines is greatly increased.

If nothing but a sale were involved, I might support complainant's

contention that defendant has violated the Clayton Act by preventing its wholesale dealers from selling the Pictoral Review through sub-dealers and boys; but what complainant evidently desires is, not merely to sell to these wholesalers, which it can do already in cases where the wholesalers have a retail trade, and to the extent of that retail trade, but to avail itself of the organization of the Curtis boys, built up by the ingenuity, labor, and capital of the defendant. The defendant, in insisting upon maintaining the integrity of its system, is not in my opinion guilty of unfair trade. On the contrary, the complainant, in attempting to avail itself of this system, is engaging in unfair trade. That it cannot build up a system of its own, if it desires to do so and will go to the trouble and expense, I do not believe. It is attempting here to secure a preliminary injunction to prevent the defendant from contracting with the latter's district agents not to market the Pictorial Review through boys and dealers. To grant such an injunction would break up what I think is a perfectly legitimate system for the promotion of sales of the defendant's magazines, and would enable the complainant, without expense, to employ the organization built up and fostered by the defendant.

If I thought that the system of marketing defendant's magazines was a cover to avoid the provisions of the Clayton Act, or obtain a monopoly, I might reach a very different conclusion, but I am satisfied that the system is genuine, and not in any respect other than what it represents itself to be. It may not be entirely original, but I think it is doubtless due very largely to the constructive business ability of the defendant in devising an ingenious means of marketing its magazine. The principal reason, doubtless, for selling the magazines to the district agents, rather than making consignments, with consequent financial risks, is one of safety and simplicity, and is not sufficient, in my opinion, to subject the relations of the parties in all respects to those of mere vendor and vendee.

Judge Hough, in the case of Great Atlantic & Pacific Tea Co. v. Cream of Wheat Co. (D. C.) 224 Fed. 566, held that the refusal of the manufacturers of Cream of Wheat to sell to a dealer who resells at retail at less than the regular price did not entitle the dealer to an injunction to restrain such conduct on the part of the manufacturer, and added that the substantial restraint of competition denounced by the Clayton Act is an unreasonable restraint. He placed his decision largely on the ground that defendant had a lawful monopoly in Cream of Wheat, because there could be nothing lawfully called "Cream of Wheat" without defendant's consent and approbation. It may in the same way be said in this case that the defendant has a lawful right to employ the means of selling its product exclusively through the League of Curtis Salesmen. It is not the monopoly of a patented article or of a trade-name, but so long as the defendant is maintaining the above agency for selling its product, just so long, I think, it has a right which the law will recognize to refuse to have its magazines sold by the boys, if they are to handle at the same time a competing magazine of the complainant. The fact that they are a better trained set of boys, with a larger measure of experience, and perhaps also of

good will in the community, than any which the complainant is likely readily to secure, is immaterial.

Any restraint of competition which may take place is due to no other cause than the employment by defendant of selling agents who contract not to distribute the Pictorial Review through subagents or boys who are engaged in selling the Ladies' Home Journal. In some towns there may be no existing agent as efficient as the one employed by the defendant, but that fact may in many cases be due to the thorough prosecution of the plan of organizing news boys and selling magazines through them which the Curtis Publishing Company has developed. In these localities complainant can doubtless obtain equally good selling agencies by the expenditure of a similar amount of effort. Looking behind the form of the contract which the defendant makes with its agents to the inherent features of the transaction, I think it may be said that the selling arrangement more nearly resembles an agency conducted by district agents in co-operation with the Curtis boys than it does an outright sale to the district agents and nothing more. At any rate it has not been established, with the clearness necessary to warrant the granting of a temporary injunction, that the defendant's contract referred to causes an unreasonable restraint of trade or otherwise comes within the prohibitions of the Clayton Act.

The motion for a temporary injunction must be denied.